**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** : | Case No.   2:20-cv-2294 | |
| : | | |
| **Plaintiff,** : | | |
| : | | |
| v. : | | |
| : | | |
| **EIGHT THOUSAND ONE HUNDRED** : | **VERIFIED COMPLAINT FOR** | |
| **AND 00/100 DOLLARS ($8,100.00) IN** : | **FORFEITURE IN REM** | |
| **UNITED STATES CURRENCY,** : | | |
| : | | |
| **Defendant.** : | | |

Plaintiff, United States of America, by its undersigned counsel, alleges the following for its action against the defendant in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

## NATURE OF THE ACTION

1. This is a civil action *in rem* brought to enforce 21 U.S.C. § 881(a)(6), which provides for the forfeiture to the United States of:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

## THE DEFENDANT IN REM

2. The defendant is Eight Thousand One Hundred and 00/100 Dollars ($8,100.00) in United States Currency.   On or about November 6, 2019, the Drug Enforcement Administration ("DEA") seized the defendant from Jai Barker, following a consensual encounter with him at the John Glenn Columbus International Airport.   The defendant has been deposited into the Seized Asset Deposit Fund, where it will remain during the pendency of this action.

## JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant under 21 U.S.C. § 881(a)(6). This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the defendant under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio.

5. Venue is proper in this district under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio and under 28 U.S.C. § 1395 because the defendant was found in the Southern District of Ohio.

## BASIS FOR FORFEITURE

6. The defendant is subject to forfeiture under 21 U.S.C. § 881(a)(6) because it represents property furnished or intended to be furnished in exchange for a controlled substance, represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846.

## FACTS

7. On or about November 6, 2019, members of the Columbus, Ohio Airport DEA Group at John Glenn Columbus International Airport ("CMH") received information regarding the suspicious travel of a passenger identified as Jai Barker ("Barker").

 a. Members of the Columbus, Ohio Airport DEA Group are trained and experienced and know that persons engaged in the commercial interstate

2

distribution of controlled substances frequently use CMH and the aircraft that arrive and depart there to transport drug sales proceeds, and funds to be used to purchase drugs, in and out of Columbus.   Those proceeds and funds are usually in the form of United States currency.

  b. Members of the Columbus, Ohio Airport DEA Group are trained and experienced and know that persons engaged in the commercial interstate distribution of controlled substances frequently use couriers to transport controlled substances, drug sales proceeds, and funds to be used to purchase drugs in and out of Columbus.   CMH and the aircraft that arrive and depart there are relied upon as a means of sending and receiving such couriers.

  c. Members of the Columbus, Ohio Airport DEA Group are trained and experienced in investigating illegal drug and drug currency couriers, and they have learned to observe and detect the behavior, characteristics, and other travel indicators that help them to distinguish suspected illegal drug and drug currency couriers from the normal, non-criminal traveling public.

  d. Members of the Columbus, Ohio Airport DEA Group are trained and experienced and know that illegal drug and drug currency couriers often purchase airline tickets within 72 hours of travel.

  e. Members of the Columbus, Ohio Airport DEA Group also know that illegal drug and drug currency couriers will often purchase one-way tickets because the date of their return is not immediately known.

  f. DEA Task Force Officer Eric Doyle ("TFO Doyle") is a member of the Columbus, Ohio Airport DEA Group.

8. Based on the information received, the officers learned that on November 6, 2019, at approximately 1:30 a.m., a third party had purchased one-way tickets for Barker and John Dixon ("Dixon") to travel that same day on American Airlines Flight #2102 from CMH to the Seattle-Tacoma International Airport (SEA), with a layover at the Los Angeles International Airport (LAX).

9. On November 6, 2019, at approximately 3:35 p.m., TFO Doyle and DEA Task Force Office Raul Melo ("TFO Melo") observed Barker and Dixon at the CMH American Airlines ticketing area. The officers were aware that Flight #2102 was set to begin boarding at approximately 3:30 p.m. and was set to depart at approximately 4:00 p.m. The officers did not observe Barker or Dixon checking any luggage.

10. The officers then moved to the airport's security screening area. As Barker left the screening area, TFO Doyle approached Barker in a way as not to block his freedom of movement, identified himself as a law enforcement officer, displayed his credentials, advised Barker that he was not in trouble and was free to leave, and asked if he would speak to TFO Doyle about his travel. Barker agreed.

11. TFO Doyle noted that Barker was not carrying any luggage and had only a "fanny-pack" style bag. TFO Doyle explained to Barker that he was speaking to him because of his recent ticket purchase. Barker advised that his girlfriend had booked his ticket and stated only that he was going to "kick it." When asked what he intended to do for clothing while on his trip, Barker did not respond.

12. TFO Doyle then asked Barker if he was carrying any illegal narcotics, weapons or large amounts of United States currency. Barker stated, "No." In response to TFO Doyle's request, Barker consented to a search of his person and fanny-pack.

13. Upon searching Barker and his fanny-pack, TFO Doyle located a large amount of United States currency secured by a rubber band. TFO Doyle asked Barker how much currency he was carrying. Barker stated that he did not know.

14. TFO Doyle also found that Barker was carrying eight cellular telephones of varying brands and values: four Apple phones, two Motorola phones, an LG phone, and a ZTE TracFone phone. TFO Doyle asked Barker why he had all of the cellular telephones. Barker stated that they were for work but provided no further information.

15. TFO Doyle then asked Barker what he did for work. Barker advised that he was a dump truck driver but refused to provide any specifics about his work or employment.

16. Based on his training and experience, TFO Doyle believed that the currency in Barker's possession was proceeds from illegal drug activity and advised Barker that the DEA would be administratively seizing the currency and cellular telephones.

17. While TFO Doyle spoke to Barker, TFO Melo spoke to Dixon who was traveling with Barker. Dixon was carrying a duffle bag. Although he denied carrying a large amount of United States currency, TFO Melo received consent to search Dixon's duffle bag and located a large amount of currency concealed within the clothing in the duffle bag. Dixon advised that he did not work. TFO Melo administratively seized the currency found in Dixon's possession.

18. The officers asked both Barker and Dixon to accompany them to the DEA's airport office to allow for a further investigation. Both Barker and Dixon declined, accepted DEA-12 custody receipts for the seized property, and left the airport without boarding their flight.

19. The officers returned to the DEA's airport office and requested assistance from Columbus Regional Airport Authority Police K-9 Officer Jenelle DiFolco ("Officer DiFolco") and certified narcotic detection K-9 "Daron" to conduct a K-9 sniff of the seized currency.

20. The currency seized from Barker was placed in a new United States Postal Service Priority Mail package ("USPS package") and sealed. The narcotic detection K-9 sniff consisted of two separate K-9 sniffs as follows.

    a. Ten USPS packages were placed in a circle in the DEA office. Five packages were empty and five contained shredded, circulated and un-circulated currency. Officer DiFolco and K-9 Daron entered the area, and Officer DiFolco gave K-9 Daron the command to search. K-9 Daron sniffed all ten packages and did not show a change in behavior. Officer DiFolco and K-9 Daron then left the area.

    b. The DEA officers replaced one of the packages with the USPS package that contained the money from Barker. The location of the money was unknown to Officer DiFolco. Officer DiFolco and K-9 Daron returned to the area, and Officer DiFolco gave K-9 Daron the command to search. K-9 Daron entered the circle of packages and quickly sniffed them. Officer DiFolco noted that K-9 Daron showed a change of behavior on the second package that he sniffed by squaring off to the package and scratching it, indicating a positive alert for the odor of narcotics on the package. The DEA officers advised Officer DiFolco that it was the package containing the money seized from Barker.

21. An official count of the United States currency seized from Barker revealed that the currency totaled $8,100.00 (the defendant):

| Denomination | Quantity | Total |
|---:|---:|---:|
| $100 | 59 | $5,900.00 |
| $20 | 110 | $2,200.00 |
|  |  | $8,100.00 |

22. The K-9 team conducted a similar narcotic K-9 detection sniff on the currency

seized from Dixon ($5,081.00), which also resulted in a positive alert for the odor of narcotics. As of the filing of this complaint, Dixon has failed to file a timely claim with the DEA contesting the administrative forfeiture of the $5,081.00.

23. On or about February 6, 2020, the DEA received a timely claim from Barker in the administrative proceedings, asserting an interest in the defendant. In support of his claim, Barker stated that the currency was "earned from jobs performed under [his] business name of J'Sons Construction, LLC." Barker did not include any proof of income or work performed by his business.

24. A search of the Ohio Secretary of State's Business Services public website revealed that at the time of seizure, Barker had two businesses registered with the Secretary of State: J's Sons Construction, LLC and Real World Expediting, LLC.

25. On or about April 13, 2020, investigators received information from the Ohio Department of Taxation on Barker. Barker did not file personal income tax returns for the years of 2016 through 2018, or business tax returns for the years of 2017 through 2019. The department also advised that no business tax returns were filed by J's Sons Construction, LLC for the years of 2017 through 2019, or for Real World Expediting, LLC for the years of 2017 through 2018.

26. A check of Barker's criminal history revealed that in 2007, he was charged with federal narcotic and firearm violations in the Southern District of Ohio. *See United States v. Jai A. Barker*, Case No. 3:07-cr-193(1) (S.D. Ohio). On April 4, 2008, Barker was sentenced to one day of imprisonment on possession with intent to distribute heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count One) and to sixty months of imprisonment on possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three), to be served consecutively, and to three years

of supervised release. Barker also was ordered to forfeit his interest in a firearm, ammunition, and $1,476.00 in United States currency.

27. Following additional incarceration related to his conviction on a federal criminal charge related to access device fraud (*see United States v. Jai A. Barker*, Case No. 3:13-cr-061(4) (S.D. Ohio)) and a violation of his supervised release in Case No. 3:07-cr-193(1), Barker was released from federal prison on or about December 2, 2016. According to the Probation Office for the United States District Court for the Southern District of Ohio, Barker was released from supervised release on or about December 1, 2019.

28. Based on the foregoing facts, the United States asserts that the defendant, $8,100.00 in United States currency, represents property furnished or intended to be furnished in exchange for a controlled substance, represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846. Therefore, the property is subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6).

## CLAIM FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that:

(a) pursuant to Rule G(3)(b)(i), Supplemental Rules, the Clerk issue a warrant of arrest *in rem*, directing the United States to arrest and seize the defendant and to retain the same in its custody subject to further order of the Court;

(b) the Court, pursuant to Rule G(4), Supplemental Rules, direct the United States to give notice to all persons and entities having an interest in the defendant to assert, in conformity with the law, a statement of any interest they may have, including notice by publication on the official government website, www.forfeiture.gov, for 30 consecutive days;

(c) the forfeiture of the defendant to the United States be confirmed, enforced, and ordered by the Court;

(d) the Court thereafter order the United States to dispose of the defendant as provided by law; and

(e) the Court award the United States all other relief to which it is entitled, including the costs of this action.

                              Respectfully submitted,

                              DAVID M. DEVILLERS
                              United States Attorney

                              s/Deborah D. Grimes
                              DEBORAH D. GRIMES (0078698)
                              Assistant United States Attorney
                              Attorney for Plaintiff
                              221 East Fourth Street, Suite 400
                              Cincinnati, Ohio 45202
                              (513) 684-3711
                              Deborah.Grimes@usdoj.gov

**VERIFICATION**

I, Eric M. Doyle, hereby verify and declare under the penalty of perjury that I am a Task Force Officer with the Drug Enforcement Administration, that I have read the foregoing Verified Complaint for Forfeiture and know the contents thereof, and that the matters contained in the complaint are true to my own knowledge, except those matters stated to be alleged on information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, and my investigation of this case.

I hereby verify and declare under the penalty of perjury that the foregoing is true and correct.

5/6/2020
Date

*Eric Doyle*
ERIC M. DOYLE, Task Force Officer
Drug Enforcement Administration

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**(b)** County of Residence of First Listed Plaintiff: Franklin
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Deborah D. Grimes, Assistant United States Attorney
221 E. Fourth Street, Suite 400
Cincinnati, Ohio 45202   (513) 684-3711

## DEFENDANTS
Eight Thousand One Hundred and 00/100 Dollars ($8,100.00) in United States Currency

County of Residence of First Listed Defendant: Franklin
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
[X] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question *(U.S. Government Not a Party)*
[ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [X] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 340 Marine / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 345 Marine Product Liability | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | | **PERSONAL PROPERTY** | | [ ] 480 Consumer Credit |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) | |
| | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| | | | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/Accommodations / [ ] 530 General | | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 446 Amer. w/Disabilities - Other / **Other:** / [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | [ ] 448 Education / [ ] 550 Civil Rights | | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation - Transfer
[ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Forfeiture pursuant to 21 U.S.C. § 881(a)(6)
Brief description of cause:
Forfeiture

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE: 
DOCKET NUMBER:

DATE: 05/06/2020
SIGNATURE OF ATTORNEY OF RECORD: s/ Deborah D. Grimes

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE